UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **GLENDA PALMER,** *et al.*, ) | |
| Plaintiffs, ) | 2:09-cv-01791 JWS |
| vs. ) | **ORDER AND OPINION** |
| **STATE OF ARIZONA,** *et al.*, ) | [Re: Motion at Docket 167] |
| Defendants. ) | |

## I.  MOTION PRESENTED

At docket 167, defendant Robert Stewart ("defendant" or "Stewart") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Glenda Palmer, *et al.* ("plaintiffs") oppose the motion at docket 191. Stewart's reply is at docket 206. Plaintiffs' authorized sur-reply is at docket 214. Oral argument was requested but would not assist the court.

## II.  BACKGROUND

Timothy Lucero ("Lucero") was murdered while in custody of the Arizona Department of Corrections. Lucero was originally held in the Special Management Unit 1 ("SMU-1") at the Arizona State Prison Complex ("ASPC")-Eyman. Stewart was the warden at ASPC-Eyman. SMU-1 was a Level 5, maximum security unit. Tara Diaz was

-1-

a deputy warden and supervisor of SMU-1. Lucero was in SMU-1 from October 5, 2007 until May 14, 2008. On May 14, 2008, Lucero was transferred to the Cimarron Unit at ASPC-Tuscon. The Cimarron Unit was a Level 3/4 unit. Lucero was murdered there on September 4, 2008.

Prior to his transfer, on December 4, 2008, Lucero told prison officials that he had information about the murder of another inmate, Christopher Wathan ("Wathan"), and the involvement of the Aryan Brotherhood prison gang. On January 25, 2008, Lucero told an official that the gang had ordered him to murder Wathan, but that he refused, putting his own safety at risk. Lucero was subsequently interviewed. The first interview was conducted on January 30, 2008 and was attended by John Ballos, a Yuma County Attorney; Henry Ross ("Ross"), a special investigator with the Arizona Department of Corrections; and Preston Gamblin ("Gamblin"), a correction officer at ASPC-Eyman.[1] Lucero repeatedly stated his belief that he would be murdered for revealing information about the Aryan Brotherhood prison gang and its involvement in Wathan's murder.

On February 27, 2008, Chief Criminal Deputy Yuma County Attorney Roger Nelson ("Nelson") wrote a letter to Ross in which he stated that the Yuma County Attorney's Office believed that Lucero was in danger and needed to be transported to a prison outside Arizona.[2] Ross faxed the letter to Robin Smithson, Stewart's administrative assistant, on March 5, 2008.[3] Smithson stated in her deposition that the

---

[1]Gamblin is also a defendant to this action.

[2]Doc. 168-1 at 32.

[3]The fax is erroneously addressed to "Robert Smithson." *Id.* at 29.

letter was placed on Stewart's desk.[4]  Stewart maintains that the letter was faxed from his office to SMU-1 on the same day.[5]

Stewart followed up with Diaz via e-mail on March 22, 2008, after receiving a call from Ross.  Diaz responded that she was unaware of the letter. Stewart did not respond.[6]  On March 25, 2008, Diaz responded again and told Stewart that Lucero was a "[protective segregation] status inmate housed in Wing classified as Max/4 [as] of 1/4/08."[7]  Diaz assumed that Lucero was in protective segregation based on his being housed in Wing 4.[8]  Diaz did not learn that she was mistaken–Lucero was in the general population–until after Lucero's death.[9]

Glenda Palmer is Lucero's mother.  She filed suit on behalf of Lucero's estate, along with Lucero's father and daughter, in Arizona state court in July of 2009.  The case was promptly removed to federal court.  Plaintiffs asserted claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985, in addition to various common law torts.  The only claim remaining against Stewart is a 42 U.S.C. § 1983 claim based on an alleged violation of the Eighth Amendment.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10]  The materiality requirement ensures that "only disputes over facts that might affect the

---

[4] Doc. 192-2 at 81.

[5] Doc. 168-1 at 29.  The evidence that it was faxed to SMU-1 is a fax cover sheet indicating transmission to Smithson, with a handwritten note that it was "faxed to SMU-1" with an illegible signature. *Id.*

[6] Doc. 168-1 at 41.

[7] *Id.* at 34.

[8] *Id.* at 41.

[9] *Id.*

[10] Fed. R. Civ. P. 56(a).

outcome of the suit under the governing law will properly preclude the entry of summary judgment."[11]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]  In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[13]  The reviewing court may not weigh evidence or assess the credibility of witnesses.[14]  The burden of persuasion is on the moving party.[15]

## IV.  DISCUSSION

**A.  42 U.S.C. § 1983 Claim**

Plaintiffs' § 1983 claim against Stewart is premised on an alleged violation of the Eighth Amendment.  "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners."[16]  A failure to fulfill that duty violates the Eighth Amendment if the deprivation alleged is "sufficiently serious" and the product of "deliberate indifference" on the part of the prison official.[17]  Deliberate indifference is akin to recklessness.[18]  It is established where the prison official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] the inference."[19]

---

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[12] *Id.*

[13] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[14] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[16] *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

[17] *Farmer*, 511 U.S. at 834.

[18] *Id.* at 836.

[19] *Id.* at 837.

Stewart argues that no reasonable jury could conclude that he was deliberately indifferent to Lucero's safety.  Stewart bases his argument on contentions that "[t]here is no evidence that Stewart actually knew about the risk to Lucero until . . . March 22, 2008" and that in response to his query on that date, Diaz told him that Lucero was already in protective segregation.[20]  He also argues his duty to protect Lucero was delegated to Diaz on March 5, 2008, when the letter describing potential danger to Lucero was allegedly faxed to SMU-1.

As a threshold matter, Stewart's argument cuts two ways.  Stewart claims there is no evidence he knew anything of the danger to Lucero until March 22, 2008.  If that was the case, however, he could not have meaningfully delegated any duty to Diaz on March 5, 2008.

Plaintiffs point out that Diaz had no record of any fax transmission,[21] and Stewart did not respond to Diaz's follow-ups to his e-mail of March 22, 2008.  If Stewart was aware of the letter, and failed to take any action for approximately two weeks, and even then did not respond to Diaz's requests for more information, that sequence could support a potential finding of deliberate indifference.  If the letter *was* faxed from his office to SMU-1 on March 5, 2008, a reasonable jury could conclude that Stewart was aware of its content and the question is whether a reasonable jury could find that Stewart was deliberately indifferent based on his subsequent communications with Diaz.

Stewart argues that evidence that Diaz followed up verbally–and corrected her mistaken assertion that Lucero was in protective segregation–is inadmissible double hearsay.  Even if that evidence is inadmissible, it is not necessary for plaintiffs' claims against Stewart to survive summary judgment.  A reasonable jury could conclude, based on the evidence discussed above, that Stewart was aware of Ross's letter and consequently draw the inference that there was a substantial risk of harm to Lucero.

---

[20]Doc. 167 at 6–7.

[21]Doc. 168-1 at 41.

Even if the letter was faxed to SMU-1 on the date it was received in Stewart's office, the only subsequent communication from Stewart requested more information and indicated he wanted to speak with Diaz about Lucero the following Monday.[22]  Moreover, Diaz's responses make clear that she was unaware of the potential danger to Lucero.[23]  It is unclear how Stewart could have satisfactorily discharged his duty to protect Lucero from other prisoners by delegating responsibility to Diaz when Diaz was herself uninformed.

Stewart is not entitled to summary judgment on plaintiffs' 42 U.S.C. § 1983 claim.

**B. Qualified Immunity**

Because qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation,"[24] courts must resolve "immunity questions at the earliest possible stage in litigation."[25]  This case has been in federal court since 2009.  Nonetheless, Stewart argues he is entitled to qualified immunity and that summary judgment is appropriate on that ground.

"An officer will be denied qualified immunity in a § 1983 action only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation."[26]  District courts may exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."[27]

---

[22] *Id.* at 34.

[23] *Id.*

[24] *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

[25] *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotations omitted).

[26] *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011).

[27] *Pearson*, 555 U.S. at 236.

Here, the facts that plaintiffs have alleged would support a violation of Lucero's Eight Amendment right to be free from cruel and unusual punishment. Taken in the light most favorable to plaintiffs, plaintiffs' allegations would support a finding that Stewart was deliberately indifferent to Lucero's safety. Moreover, a prisoner's right to be free from violence at the hands of other prisoners was clearly established when Stewart learned of the potential danger to Lucero. Taken in the light most favorable to plaintiffs', the facts alleged are such that Stewart would have been aware his conduct was unlawful. Consequently, Stewart is not entitled to qualified immunity.

**C. Punitive Damages**

Stewart argues that plaintiffs' claim for punitive damages must be dismissed. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[28] Stewart argues that there is no evidence that he acted with evil intent or callously.[29] However, as discussed above, deliberate indifference and recklessness are similar standards. If a jury concludes that Stewart was deliberately indifferent to Lucero's safety, it could also conclude that he was recklessly indifferent to Lucero's Eighth Amendment rights.

### V. CONCLUSION

For the reasons above, Stewart's motion for summary judgment at docket 167 is **DENIED**.

DATED this 25th day of April 2012.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[28] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

[29] Doc. 167 at 9.